IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2014 Session

## CONSULTING AND FINANCIAL SERVICES, INC, ET AL. V. JOHN H. FRIEDMANN, SR.

**Appeal from the Chancery Court for Sumner County**
**No. 2008C205      Tom E. Gray, Chancellor**

**No. M2013-01416-COA-R3-CV- Filed April 24, 2014**

This is the second appeal of this case, arising from the installation of tile flooring. In ***Consulting and Financial Services, Inc. v. Friedmann***, No. M2011-00093-COA-R3-CV, 2012 WL 1390621(Tenn. Ct. App. April 19, 2012), we held that the trial court's measure of damages was correct, but remanded for re-calculation of the amount of damages.  The remand was necessary because the original judgment included damage amounts that were based upon tile repairs to certain areas of the home, which repairs were not raised by Appellees/homeowners within the one-year warranty period.  We did not, however, mandate the method by which the trial court could determine the adjusted amount. Upon remand, the only evidence presented was from the original contractor, who relied upon his original estimate.  To arrive at the portions of the original estimate that were for the excluded areas, the contractor had his tile subcontractor submit separate estimates for those areas.  The separate estimates were calculated using the current price-per-square-foot applicable at the time of remand, which was less than the price-per-square-foot that was used in the original estimate.  To arrive at the adjusted damages amount, the trial court simply subtracted the separate estimate amounts from the original estimate.  Appellant/Contractor appeals, arguing, *inter alia*, that the lower price-per-square-foot applicable at the time of remand should apply to the entire judgment, or, in the alternative, that the excluded amounts should be calculated using the same price as was used in the original estimate.  The "law of the case," based upon our holding in the first appeal, was that the judgment would be adjusted to exclude all costs associated with the excluded areas.  Although we did not mandate that the trial court re-try the issue of damages, we did not preclude that option in our first opinion.  However, it was implicit in our holding that, if the trial court chose to use the original estimate (which it did), then the total costs for the excluded areas would be calculated, at the same price used in the original estimate, and subtracted from the original

estimate. Because the trial court used new estimates for the excluded areas, which were not calculated at the same rate as in the original estimate, the adjusted judgment did not remove the full amount for repairs to the excluded areas that were contemplated in the original estimate. Accordingly, the law of the case was not followed. Vacated and remanded with instructions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Bruce N. Oldham, Gallatin, Tennessee, for the appellant, John H. Friedmann, Sr.

Russell E. Edwards and Michael W. Edwards, Hendersonville, Tennessee, for the appellees, Consulting and Financial Services, Inc. and Paul G. Crenshaw.

**OPINION**

In *Consulting and Financial Services, Inc. v. Friedmann*, No. M2011-00093-COA-R3-CV, 2012 WL 1390621(Tenn. Ct. App. April 19, 2012) ("*Friedmann I*"), the Contractor, Appellant John H. Friedmann, Sr., appealed the trial court's award of $106,103.92 in damages, plus $4,252.00 in discretionary costs, to Appellee/homeowners. In *Friedmann I*, we were asked to review the trial court's finding of liability, and particularly whether the trial court failed to apply the standard of performance contained in the contract and whether the trial court erred in its calculation of damages. In *Friedmann I*, we determined that the trial court applied an implied warranty of workmanship standard, as first enumerated in *Dixon v. Mountain City Const. Co.*, 632 S.W.2d 538 (Tenn.1982), rather than the contractual standard. However, after a *de novo* review of the evidence, we modified the trial court's judgment to hold that the Mr. Friedmann had breached the contractual standard, and remanded the case for a determination of the appropriate amount of damages. A full recitation of the factual history of the case is set out in *Friedmann I*. In the interest of continuity and judicial economy, we restate the relevant facts here:

On May 10, 2004, Consulting and Financial Services, Inc. ("CFS") contracted with John H. Friedmann, Sr., a licensed general contractor, to construct a home in the Fairvue Plantation subdivision in Gallatin, Tennessee. The "Building Contract" ("the contract") provided, among other things, as follows:

1. That the Contractor will construct in a good, workmanlike manner, and without delay, a dwelling or other specified building in accordance with the plan, drawings, and specifications attached to and made part of this Contract on the following described property. . . .

8. The Contractor shall correct any work that fails to conform with the requirements of the contract documents where such failure to conform appears during the progress of the work, and shall remedy any defects due to faulty materials, equipment or workmanship which shall appear within a period of one year from the date of the issuance of a Use and Occupancy Permit. The provision of this article apply [sic] to work done by subcontractors as well as work done by direct employees of the Contractor. Contractor warrants the fitness and habitability of the work, and compliance with all codes.

[The president of CFS,] Paul G. Crenshaw [together with CFS, Appellees] . . . and Sherry Steffey, wife of Mr. Crenshaw and vice president of CFS, took possession of the residence on May 7, 2005. Approximately six months after moving into the home, Ms. Steffey noticed cracked tile in the kitchen. She notified Mr. Friedmann about the damaged tile; Mr. Friedmann came to inspect the tile, but he did not repair it. Subsequently, tile in the master bathroom, hallways, and foyer began to crack.

On August 8, 2008, CFS and Paul G. Crenshaw (collectively referred to as ["Appellees"]) filed suit against Mr. Friedmann. The complaint alleged that Mr. Friedmann "poorly and negligently constructed" the home, which constituted a "breach of warranty, breach of contract, and/or unjust enrichment." With respect to the allegations of breach of contract and breach of warranty, [Appellees] specifically alleged that Mr. Friedmann "failed to construct this dwelling in a workmanlike manner, and thus, has breached the warranty and/or contract with CFS." [Appellees] requested damages

-3-

equaling the cost of repair, cost of inspections, and attorney's fees.

A bench trial commenced on July 14, 2010. Mr. Crenshaw and Ms. Steffey testified primarily regarding their plans for construction of the home, their concerns about the cracked tile, their interactions with Mr. Friedmann, and how the condition of the tile worsened over time. Three consultants, hired by [Appellees], testified regarding their inspections and their reports relative to the condition of the tile and the structural significance of the cracks. A real estate agent, an engineer, a licensed contractor, and tile installation specialist testified on behalf of Mr. Friedmann regarding the installation and replacement of the tile.

The trial court entered an Order on October 15, 2010, awarding judgment to [Appellees] in the amount of $132,565.00; the court found that "the construction of the residence at 836 Plantation Way, Gallatin, Sumner County, Tennessee, by John H. Friedmann, Sr., failed to meet prevailing standards in the Sumner County Community for residential construction . . . ." In discussing the amount of the judgment, the court stated, in relevant part:

> [Appellees] present evidence of cost to repair to be $159,790.00 and [Mr. Friedmann] has one tile installer who gives an estimate of $12,432.00 and another who makes a quote of $14,750.00. The low estimates are to remove existing tile and install new tile. To limit the damages to just tile work is not just. More problems exist for correction than just replace [sic] the tile flooring. The estimated scope of work shown on Exhibit 26 made to the testimony of Gene Hughes is realistic.

> The court awards a judgment in favor of [Appellees] for $132,565.00 which is cost of material and labor for estimated work at $118,362.00 and profit at 12% of $14,203.00 ($118,362.00 plus $14,203.00 = $132.565 [sic] ).

-4-

On November 3, 2010, the trial court entered an Order awarding $4,252.00 in discretionary costs to [Appellees].

On November 15, 2010, Mr. Friedmann filed a Motion to Alter or Amend requesting that the court alter the amount of the judgment by deducting the amount awarded for retiling the basement. The court granted the motion and reduced the judgment to $106,103.92.

*Friedmann I*, 2012 WL 1390621, at *1–2. As noted above, in *Friedmann I*, we first determined that the trial court had, in fact, applied the correct measure of damages. Specifically, we reasoned:

Mr. Friedmann argues that, because there has been no reduction in the value of the Plaintiffs' property, they are not entitled to an award of damages. He also contends that the repair estimates are "inflated" and "grossly disproportionate to any reduction in value."

Tennessee courts have discussed two methods of measuring damages in actions for breach of a construction contract—cost of repair and diminution in value. *See Wilkes* [*v. Shaw Enterprises, LLC*, No. M2006-01014-COA-R3-CV,] 2008 WL 695882, at *10 [(Tenn. Ct. App. March 14, 2008)]. The distinction between the two measures has been summarized by our Court thusly:

As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects

-5-

or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it sometimes said) the difference between the value of the defective structure and that of the structure if properly completed.

*Id*. (quoting *Edenfield v. Woodlawn Manor, Inc.*, 462 S.W.2d 237, 241 (Tenn. Ct. App. 1970); *see also Mize v. Consulo*, M2011-00455-COA-R3CV, 2011 WL 6152980 (Tenn. Ct. App. Dec. 8, 2011). In sum, "[g]enerally, the measure of damages will be the cost [of] repair unless the repairs are not feasible or the cost is disproportionate to the [diminution] in value." *GSB Contractors*, 179 S.W.3d at 543 (quoting *Radant v. Earwood*, No. 02A01-9802-CV-00029, 1999 WL 418339, at *8 (Tenn. Ct. App. June 22, 1999)). Importantly, "[t]he burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omissions." *Id*. (citing *Nutzell v. Godwin*, 1989 WL 76306, at *1 (Tenn. Ct. App. July 13, 1989)).

Thus, in order for the award of damages to be other than the cost of repair, it was incumbent upon Mr. Friedmann to offer proof showing diminution in value. *See Nutzell*, 1989 WL 76306, at *1–2 (affirming trial court's use of cost of repair measure where defendant failed to produce evidence of diminution in value). The only proof Mr. Friedmann offered in this regard was the testimony of Susan Maddox-Reed, a realtor hired by [Appellees], who testified that the home was originally listed for sale in June 2007 for $1,150,000.000, that the price was subsequently reduced to $924,000.00, and that she was unable to sell the home. We do not find Ms. Maddox–Reed's testimony to be probative evidence of diminution in value.

In determining the diminution in value, comment b to the Restatement (Second) of Contracts § 347 provides the following guidance:

the loss in value caused by the breach is equal to the difference between the value that the performance would have had if there had been no breach and the value of such performance as was actually rendered. In principle, this requires a determination of the values of those performances to the injured party himself and not their values to some hypothetical reasonable person or on some market.

Restatement (Second) of Contracts § 347 cmt. b []. Ms. Maddox-Reed testified regarding the listing price of the property, but she did not give an appraisal or other competent evidence of value or diminution in value. Moreover, in ruling that the cost of repair was the most appropriate measure of damages, the trial court implicitly held that the cost of repair was not unreasonable. We find no error in the trial court's use of the cost of repair as the measure of damage in this case.

*Friedmann I*, 2012 WL 1390621, at *6-7 (footnote omitted).

Having concluded that the trial court used the appropriate measure of damages, we then proceeded to address the question of whether the trial court erred in the computation of damages. On this issue, we explained:

The court based its determination of damages on the estimate of Gene Hughes, a licensed general contractor who testified at trial and submitted a written estimate which was made an exhibit to his testimony. Mr. Friedmann first contends that the trial court erred in relying on the estimate of Mr. Hughes because his testimony regarding repair costs was "excessive" and "speculative." Mr. Friedmann also asserts that Mr. Hughes' estimate includes costs for repairs of items that were not identified by [Appellees] within the one-year time frame outlined in the contract and that the trial court erred in awarding damage for such repairs. Specifically, it is Mr. Friedmann's contention that the trial court erroneously awarded damages for repair of the deck.

We first consider Mr. Friedmann's argument that Mr.

-7-

Hughes' testimony was speculative and excessive. The trial court stated the following regarding the written estimate and testimony of Gene Hughes:

> Gene Hughes testified that he has been a home builder for thirty five (35) years in the company of Hughes-Edwards Homes. From Exhibit 26 the court finds the first paragraph leads to a conclusion that the workmanship at 836 Plantation Way did not meet the workmanship standards prevailing in the community. For repairs Mr. Hughes estimated costs to repair to be $159,790.00. His costs of repair reflected a 35% profit margin and thorough work on all aspects of repair. . . .
>
> . . . The estimated scope of work shown on Exhibit 26 made to the testimony of Gene Hughes is realistic.

We find nothing in the record to preponderate against the trial court's finding that Mr. Hughes' estimate is "realistic" and "thorough." Moreover, the trial court did not accept Mr. Hughes' estimate wholesale; rather, the court made modifications to the amount of damages awarded by omitting damages for repair to the basement of the home and changing the profit margin to 12%. We find no error in the trial court's acceptance of Mr. Hughes' estimate rather than the estimates proffered by Mr. Friedmann. Mr. Hughes' estimate also includes costs of repair for the basement, and the trial court included cost of repairing the basement in its original order; however, the trial court eliminated damages awarded for basement repairs in ruling on the motion to alter or amend.

Mr. Friedmann also contends that [Appellees] did not notify him of some items included in the award of damages within the time frame outlined in the contract, and that, consequently, the award for those items was not available under the contract.

The trial court awarded damages in accordance with the repair estimate of Mr. Hughes.[1] We have reviewed Mr. Hughes' estimate and note that the estimate includes repair costs for problems with the decking, contrary to paragraph 8 of the contract. For example, Mr. Hughes lists the "Estimated scope of work" to include: removal of tile on both back porches, removal of material under the tile, building up slope on porch floors, applying water proofing mat on porch floors, and installing new tile on porch floors. The portion of the estimate detailing the monetary amount for repair does not delineate which line items relate to problems with the deck.

There is undisputed evidence that [Appellees] notified Mr. Friedmann regarding the cracked tile within one year of their occupancy of the home. However, there was no evidence indicating that either Mr. Crenshaw or Ms. Steffey noticed any issue with the deck within the one-year time frame outlined in the contract. In ***Bunch v. Cooper***, buyers and sellers of a newly constructed home entered into a contract that disclaimed "all other warranties" and expressly warranted the materials and workmanship of the construction for one year. ***Bunch v. Cooper***, No. 03A01-9705-CV-00154, 1997 WL 600150 (Tenn.

---

[1] The itemized estimate provides as follows:

Crenshaw estimate: Cost
Move furniture 1200[sic]
R & R tile 1st floor 56,616
2nd floor 15874[sic]
Lumber 4,000
Carpenter 14,000
Electrical 850
Move cabinet base 1,000
Granite 4200[sic]
Trim Material & Labor 2250[sic]
Paint 1200[sic]
Protective Material 250
Dumpster 400
Misc. 5000[sic]
Rough clean up 3000[sic]
Final Clean up 850

Ct. App. Sept. 30, 1997). Buyers discovered water problems with their home more than one year after moving in and sued sellers for recovery of damages. We held that the buyers could not avoid the one-year express warranty and were therefore unable to recover for the problems occurring outside of the one-year time frame. *Id*. at *3. Likewise, we find that [Appellees] in this case should be limited to recovery for the cost of repairs they identified and complained of within the one-year period outlined in the contract. Therefore, we must vacate the judgment and remand the case for the trial court to determine the amount of damages not including repair work on the deck.

*Friedmann I*, 2012 WL 1390621, at *7–8 (footnote in original).

Upon remand from this Court, a hearing was held on February 1, 2013. The only testimony given at the remand hearing was from Gene Hughes, the original contractor. As discussed *infra*, Mr. Hughes relied upon his original estimate, but had his tile subcontractor submit separate bids for the porch and deck areas that were specifically excluded, under *Friedmann I*, from the damages. These separate estimates were calculated at the price applicable at the time of remand, which was less than the price-per-square-foot that was used to arrive at the original estimate. The trial court simply subtracted the separate estimates from the original estimate to arrive at the adjusted judgment. On February 19, 2013, the trial court entered its order, stating, in relevant part, that:

> 1. The remand hearing is for this Court to determine the damages to the [Appellees'] home not including repair work on the deck, according to the opinion from the Court of Appeals, which the parties agree to mean the deck and screened-in porch.
>
> 2. Gene Hughes rendered an estimate for the total amount of repairs needed to be done to the [Appellees'] home and he testified as to this at the original trial on behalf of the [Appellees]. Mr. Hughes was specifically found by this Court to be credible, and the Court relied upon Mr. Hughes's testimony in rendering its judgment against [Mr. Friedmann] in the amount of $106,103.92. The amount of damages as opined by Mr. Hughes was upheld on appeal, with exception to the removal of the decking from his estimate as set forth above.

3. Mr. Hughes testified at the remand hearing as well regarding the estimate he prepared for repairs to solely the deck and the screened porch, and said repairs total $14,448.00. [Mr. Friedmann] did not offer any expert testimony to refute this amount.

4. The Court again finds Mr. Hughes to be credible in his testimony and his estimate for repairs to the deck and screened porch are found to be reasonable. The Court therefore deducts the said $14,448.00 from the original judgment amount of $106,103.92; thus leaving a judgment against [Mr. Friedmann] in favor of [Appellees] in the amount of $91,655.92.

On March 21, 2013, Mr. Friedmann filed a motion to alter or amend the foregoing judgment, or, in the alternative, for a new trial. Mr. Friedmann's motion was denied by order entered on May 15, 2013. Mr. Friedmann appeals; he raises one issue for review as stated in his brief:

In the prior appeal, the award of damages was vacated, and the case was remanded to the trial court to determine the cost of repairs that the [Appellees] identified and complained of within the one year period outlined in the contract. On remand, the [Appellees'] expert testified that he was not asked to review his previous estimate used at the prior hearing, he could not delineate which portions of the line items listed on his previous estimate were applicable to the damages complained of within the one year time limit, and that the price per square foot for replacement of tile on his new estimate was significantly lower than the price used in his earlier estimate. Under these facts, did the [Appellees] fail to prove their damages by a preponderance of the evidence.

The purpose of assessing damages in a breach of contract action is to "place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990). A trial court's determination regarding the proper amount of damages is a question of fact. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App.2005) (citing *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App.1998)). However, it is well settled that the amount of damages may not be exact in cases of breach of contract. As noted in 24 Samuel Williston, Treatise on the Law of Contracts § 64:8 (4th ed.):

[D]amages which are considered to be too remote and speculative are not recoverable [in a breach of contract case]. "[W]here actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed."

**The amount of damages must be established with reasonable, not absolute, certainty**. The exact amount need not be shown, since mathematical precision is not required. It is sufficient if a reasonable basis for computation of damages is afforded, even though the result will only be approximate.

*Id*. (footnotes omitted) (emphasis added).

Because this case was tried by the court, sitting without a jury, we review the factual issue, concerning the proper amount of damages, *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). Unless the evidence preponderates against the trial court's findings, we must affirm, absent error of law. *Id*. In order for the evidence to preponderate against the trial court's findings, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). In addition, and as set out in its order, *supra*, the trial court made specific findings that both Mr. Hughes' testimony, and his estimate, were credible. It is well settled that when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Whitaker*, 957 S.W.2d at 837; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

We first noted that, during the remand hearing, an issue arose concerning the scope of the trial court's re-calculation of damages. As set out in full context above, in *Friedmann I*, we held that: (1) there was "no error in the trial court's acceptance of Mr. Hughes' estimate rather than the estimates proffered by Mr. Friedmann;" (2) the trial court correctly removed Mr. Hughes' estimate for costs of repair for the basement in its ruling on the motion to alter or amend because Appellees had not complained of damage to the basement within the one-year warranty; (3) the Appellee "should be limited to recovery for the cost of repairs they identified and complained of within the one-year period outlined in the contract;" (4) the Appellees did not complain of damages to the decks (which, according to the order appealed, *supra*, the parties' agreed included both the deck and the screened porch) within the one year

-12-

warranty; (5) because Mr. Hughes' estimate included, but did not delineate, those repairs associated with the deck and porch, and we could not determine these amounts from Mr. Hughes' estimate, we vacated the judgment and remanded for re-calculation to exclude the deck and porch areas.

As correctly noted in Appellees' brief, the phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. *Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (citations omitted).

> Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. There are limited circumstances which may justify reconsideration of an issue which [] was decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

*Memphis Publ'g*, 975 S.W.2d at 306 (citations omitted). In *Friedmann I*, we vacated the original judgment and remanded for re-calculation of damages, excluding repairs to the porch and deck. We did not, as Appellees contend, limit the trial court's ability to entertain additional, or different, evidence on this question. This is a point that the trial court understood and noted in its statement from the bench that: "the court did not intend to stop any testimony on the remand or any testimony put forward by [either party] relative to the damages issue." However, we did not, as Appellant contends, mandate that the trial court try the issue of damages "from scratch," nor did we require the damages for the excluded porch and deck to be determined in any particular way. Although we did not take issue with Mr. Hughes' original testimony, or his original estimate, we could not determine what portions of the estimate were for work to the excluded areas, so as to adjust the judgment to exclude those costs.

At the remand hearing, Mr. Hughes was the only witness. As set out above, the trial court made a specific finding that Mr. Hughes' testimony at the remand hearing was credible, and we give great weight to findings concerning a witness' credibility. *Whitaker*, 957 S.W.2d

-13-

at 837.  In relevant part, Mr. Hughes testified as follows:

Q.  Mr. Hughes, did I understand that when you were asked . . . to prepare this new estimate that you did not go back and look at your old estimate, you just came up with a new one–
A.  That's correct.

\*                              \*                              \*

Q.  So you don't dispute that–and I can show you the estimate you had at the trial before [i.e., the original estimate], for instance, had $4 per square foot for tile as opposed to [$]3.  Is that because the market rates have changed . . . .
A.  I didn't go back and look at the other.  I didn't–typically we do [$]3.  I don't know why we did that [i.e., original estimate] [at] [$]4.

\*                              \*                              \*

Q.  And what is the reason that you're now testifying to what works out to about $13 a square foot for the tile on the decks?  Is it just because you're using a different–
A.  What is $13?
Q.  Well, looking back at your . . . new estimate, you've got demo tile at $2 a square foot, correct?
A.  That's correct.
Q.  The tile labor is $8 a square foot?
A.  That's correct.
Q.  And then tile at $3 a square foot, so that's–
A.  $13 a square foot.
Q.  $13 a square foot, versus [$]22 a square foot.  You had [$]18 plus [$]4–well, actually, it's more than that because . . . you had some charges for grout, Ditra mat, and things like that.
A.  Setting materials, stuff like that.

\*                              \*                              \*

Q.  Okay.  But do [you] agree that your earlier estimate [i.e., the original estimate] was charging exactly the same amount per square foot for the decks as it was for the living room and other areas of the house, correct?

A. Based on [this] bid, yes.

*                              *                              *

Q. And you have not gone back then and attempted to allocate out of your earlier estimate how much of that earlier estimate would have been for the main part of the house as opposed to the decks?
A. No, I did not. This [i.e., the new estimates for the porch and deck areas] is strictly a–you asked me to bid it and that's what I came up with as separate. I didn't go back and refer to anything or extract anything [from the original bid].

In addition, from Mr. Hughes' testimony, it appears that there were additional costs associated with the excluded areas that appeared in the original estimate, but which were not excluded from the new estimates:

Q. Lumber, $4,000 [in the original bid], how much of that lumber was strictly for the tile on the main floor?
A. I don't recall.
Q. Okay. Carpentry, [$]14,000 [in the original bid], how much of that was strictly for carpentry work for the tile on the main floor?
A. I don't recall. That's—majority of it was for the tile on the first floor . . . . The majority of it is the first floor.
Q. Okay. Well, some of it would have been for correcting the slope on the porch [Mr. Hughes had previously testified that the slope of the porch was not correct, causing water to pool]?
A. That's correct.

*                              *                              *

Q. But you can't tell us today how much of this original bid was actually for lumber and carpentry on this part that had to be re-tiled on the main floor, not including the porches?

*                              *                              *

A. I don't know. I don't have that broken down [].

-15-

In his brief, Mr. Friedmann argues, *inter alia*, that the damages in this case should have been calculated by taking the square footage of the main area of the house, which does not include the excluded deck and porch, and multiplying this area by $13 per square foot:

> It is not appropriate for the [Appellees] to use one price per square foot when evaluating the repair costs at trial and use a different amount when it benefits the [Appellees] to do so on remand. The award of $91,655.92 awarded by this Court on remand represents an average of $56.50 per square foot for the 1,622 square feet of tile . . . . The amount awarded to the [Appellees] on remand for tile replacement, not including the decks, should not exceed $13 per square foot based on the current estimate, which would equal $21,086 (1,622 x $13 = $21,085).

Thus, Mr. Friedmann assigns error to the fact that Mr. Hughes' new estimate on the porch and deck areas was calculated at a rate of $13 per square foot and not at the original rate he used for his estimate in the first trial. Accordingly, Mr. Friedmann contends that the amount excluded (from porch and deck areas) was less than it should have been based upon the different cost-per-square-foot amounts used by Mr. Hughes in his original estimate and in his estimate for just the porch and deck areas, or alternatively, that the price per square foot for tile replacement in those areas included in the damages (i.e., the approximately 1,622 square feet inside the house) should be calculated at no more than $13 per square foot.

While the trial court was not under mandate to rely upon Mr. Hughes' original estimate in amending the judgment to exclude the porch and deck areas, having chosen to do so, it seems axiomatic that in order to remove the excluded costs from the original estimate, not only would the trial court need to identify those portions of the original estimate chargeable to the excluded areas (including any extraneous items over-and-above the costs of demolition, tile, and labor–items such as Ditra board, lumber, electrical, paint, and the like), but it would also need to apply the same price-per-square-foot to the excluded areas as was used in the original estimate. In this way, the court would have been within the "law of the case," because Appellees' judgment would have been reduced by the full amount for the excluded areas that were included in Mr. Hughes' original estimate as contemplated in **Friedmann I**.

However, had the trial court included, in the order appealed, its reasoning for reducing the judgment at a lower price-per-square foot than was used in the original estimate, we would perhaps have sufficient guidance to decide the case on the merits. Tennessee Rule of Civil Procedure 52.01 provides, in relevant part, that: "In all actions tried upon the facts

without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id*.; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App.2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App.1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E. W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)). Without findings of fact, we cannot discern the basis for the trial court's decision, "and we are unable to afford appropriate deference to the trial court's decision." *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012). Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review despite the trial court's failure to make sufficient findings of fact and conclusions of law, in certain limited circumstances:

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

*Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb.22, 2013). Unfortunately, this is not one of those cases. Without some explanation to justify the use of one price-per-square foot in the original estimate, and a different price-per-square-foot in the new estimates for the deck and porch, it appears on its face that this method of calculation results in a windfall to the Appellees. In its order, *supra*, the trial court notes that "[Mr. Friedmann] did not offer any expert testimony to refute this amount [i.e., the new estimates for the deck and porch]." In the first instance, it was not incumbent upon Mr. Friedmann to do so as the burden of proof rested with Appellees to prove damages. As noted in 17B C.J.S. Contracts § 947: "In an action to recover damages for a breach of contract, it is incumbent on the plaintiff to prove the breach complained of

and his or her right to recover therefor. A plaintiff also has the burden of proving that damages arose from the breach, were caused by the breach, and the extent of those damages" (footnotes omitted); *see also* **Cole v. Clifton**, 833 S.W.2d 75, 77 (Tenn. Ct. App. 1992). However, Mr. Friedmann did, by Mr. Hughes' own testimony on cross-examination, establish that the calculations for the deck and porch in the original estimate and the calculations for that work in the new estimates were not calculated at the same price-per-square-foot. In addition, Mr. Hughes' testimony establishes that not all of the extraneous costs of repair to the excluded areas, which costs were included in the original estimate, were included in the new estimates for these areas. In this regard, Mr. Hughes' testimony was not uncontested. From our review of the entire record, and in the absence of any Rule 52.01 explanation for the use of different prices-per-square-foot between the two estimates, we conclude that the evidence preponderates against the trial court's calculation for the deck and porch repairs.

In addition, Mr. Friedmann also argues that some items listed in Mr. Hughes' original estimate for repairs to the kitchen area should not be allowed as part of the damages amount. Specifically, he cites the $1,000 estimate to move a cabinet base, and the $4,200 estimate for granite. In **Friedmann I**, we concluded that the Appellees "should be limited to recovery for the cost of repairs they identified and complained of within the one-year period outlined in the contract." This, too, is the law of the case. Because we must remand this case for further proceedings, the trial court may also, in its discretion, hear further proof concerning these disputed items to determine: (1) whether the Appellees complained of these items/areas within the one-year warranty period; (2) if so, whether they may recover damages; and (3) the amount of such damages. Neither our holding in **Friedmann I**, nor our holding here would preclude the trial court's ability to allow the parties to argue these matters.[2]

We vacate on the ground that **Friedmann I** required (as the law of the case) that Appellees not be awarded damages for any portion of the original estimate for areas they did not complain about within the one-year warranty. So, although we stated in **Friedmann I** that the trial court's acceptance of Mr. Hughes' original estimate was reasonable, we

---

[2] Our holding herein, however, should not be interpreted as precluding the Appellees from arguing that Mr. Friedmann's argument on these issues is waived by either his failure to raise these issues at trial and/or the failure to raise these issues in the first appeal. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *see also* **Simpson v. Frontier Community Credit Union**, 810 S.W.2d 147, 153 (Tenn.1991) ("[I]ssues not raised in the trial court cannot be raised for the first time on appeal."). We are unable to determine from the record on appeal whether these issues were timely and properly raised by Mr. Friedmann. If Mr. Friedmann failed to raise these issues at trial or in his first appeal, he may, nevertheless, be precluded from arguing these issues on remand.

anticipated that those portions for the porch and deck would be removed from that estimate upon remand at the same rate that they were originally calculated, and that all extraneous costs for these areas (e.g., repairing the sub-floor, profit and overhead, moving furniture, painting, etc.) would also be removed from the original estimate at the same rate at which these items were originally calculated. From Mr. Hughes' testimony, this was not done. Consequently, the trial court erred because it did not adhere to the law of the case. However, in *Friedmann I*, we did not go so far as to mandate that the trial court use Mr. Hughes' original estimate upon remand. Because it is clear that Mr. Friedmann did not get the benefit of having all of the costs of the excluded areas removed from the original estimate, and because the trial court did not explain (under Tennessee Rule of Civil Procedure 52.01) its reasons for allowing the excluded areas to be calculated at a lower price-per-square-foot, we conclude that the law of the case was not followed on remand. Consequently, we vacate again with these general directions. Upon remand, the court: (1) may arrive at the same judgment by using Mr. Hughes' separate calculations; however, if it does so, it must explain its reasons for allowing the calculations to made using two different prices-per-square-foot; (2) may use Mr. Hughes' original estimate, and instruct the parties to remove ALL costs for the excluded areas from the original estimate, using the same price-per-square-foot used in the original estimate; or (3) may allow the parties to re-try the issue of damages. In each of these scenarios, *Friedmann I* dictates that the basement area, the porch, the deck, and any items not complained of within the one year warranty should be determined and then excluded from the judgment. In providing these parameters, we do not wish to precisely dictate the method the trial court may use to calculate damages in this case. If, upon remand, the trial court determines that an option, other than those enumerated herein, is warranted or will serve the parties better, it is not precluded from applying that option so long as it does not interfere with the law of the case as outlined herein, and in *Friedmann I*.

For the foregoing reasons we vacate the order of the trial court and remand for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed one-half to the Appellant, John H. Friedmann, Sr., and his surety, and one half to Appellees, Consulting & Financial Services, Inc. and Paul Crenshaw, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE